UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEDRO CASTRO,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>SCOTT KERNAN, Secretary,<br><br>　　　　Respondent. | No. 1:19-cv-00323-DAD-SKO (HC)<br><br>**FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[THIRTY DAY OBJECTION DEADLINE]** |

　　　　Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He is currently serving a sentence of nine years for his convictions involving domestic violence. He filed the instant habeas action challenging the conviction. As discussed below, the Court finds the claims to be without merit and recommends the petition be DENIED.

**I.　　PROCEDURAL HISTORY**

　　　　On February 17, 2016, in the Fresno County Superior Court, Petitioner pleaded no contest as part of a negotiated plea to domestic violence and assault with a deadly weapon. People v. Castro, No. F073445, 2018 WL 6259540, at *2 (Cal. Ct. App. 2018), *reh'g denied* (Dec. 27, 2018), *review denied* (Feb. 13, 2019). Petitioner also admitted the great bodily injury enhancement with respect to the domestic violence count. Id. The plea agreement provided for dismissal of the remaining counts and enhancement, and a maximum prison term of 10 years. Id.

1

On March 10, 2016, he was sentenced to a term of 9 years. Id. at *5.

Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth DCA"). On November 30, 2018, the Fifth DCA affirmed the judgment. Id. Petitioner filed a petition for review in the California Supreme Court, and the petition was denied on February 13, 2019. (Doc. 1 at 2-3.)

On March 13, 2019, Petitioner filed the instant petition for writ of habeas corpus. (Doc. 1.) Respondent filed an answer on June 4, 2019. (Doc. 11.) Petitioner did not file a traverse.

## II. FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the Fifth DCA's unpublished decision[1]:

Castro began living with the confidential victim (CV) in June 2015.

On October 3, 2015, Castro struck the CV on the head with a wooden cutting board with such force that it opened a gash on her head and broke the board. Castro initially refused to take the CV to the hospital, but he eventually did and she received six staples to close the cut on her head (counts 1 & 2).

On October 11, 2015, at approximately 11:00 p.m., Castro accosted the CV in the living room of their apartment and accused her of cheating on him. When the CV denied the accusations, Castro became enraged and hit her on the face with an open hand and a closed fist. He then followed her into the bedroom, grabbed a wooden closet rod, and struck her all over her body. When the rod broke, Castro "stomped" on the CV's face. The CV ran back to the living room, lay on a couch, and covered her face. Castro followed her and pummeled her with closed fists. Castro then grabbed a knife and hit her with the handle on top of her head, which reopened the wound he inflicted during the prior beating. The CV again ran to the bedroom and Castro continued to punch her. After blood began running down the CV's face, she got in the shower as instructed by Castro and he continued hitting her.

Officers responded to the residence at approximately 2:51 a.m. They knocked and banged on doors and windows for 20 minutes before Castro responded. Castro eventually opened the front door and spoke to the officers through a locked security screen door, but refused to let them into the residence. Meanwhile, officers were able to get the CV to come out of the bedroom, which allowed them to see that she had multiple large bruises all over her body, an abrasion on her lower lip, and scratches on her abdomen. The officers then entered the house through a window and detained Castro.

The CV appeared scared and was hesitant to talk. Nevertheless, she told the officers that Castro had instructed her not to tell them anything because he would go to jail and her son would have to visit her at the cemetery. While the officers were photographing the CV, she became dizzy and vomited blood twice. She was

---

[1] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Therefore, the Court will adopt the Fifth DCA's summary of the facts. Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

2

subsequently admitted to a hospital. In addition to numerous bruises and reopening her head wound, the CV suffered a cut on the back of her head, a broken finger, small nose fractures, and a basilar skull fracture. The officers obtained an emergency protective order for the CV.

On December 11, 2015, during the preliminary hearing, the CV testified she provoked the October 11, 2015, assault by Castro because she told him she cheated on him and other cruel things. She also testified she provoked the October 3, 2015, assault. On December 4, 2015, the CV wrote a letter to Castro apologizing to him for getting him into trouble and professing her love for him. On December 7, 2015, she wrote Castro a second letter in which she told Castro that he did not actually hurt her. The CV further testified that earlier that week the CV told defense counsel and the prosecutor that Castro did not hurt her and that she lied when she told police that Castro told her not to tell anyone what happened. The CV also testified she still loved Castro with all her heart, that nothing was going to change that, and that it was hard for her to testify about what he did to her.

On December 18, 2015, the Fresno County District Attorney filed an information charging Castro with two counts each of domestic violence (§ 273.5, subd. (a); counts 1 & 3) and assault with a deadly weapon (§ 245, subd. (a)(1); counts 2 & 4) and one count each of dissuading a witness by force or threat (§ 136.1, subd. (c)(1); count 5) and dissuading a witness (§ 136.1, subd. (a)(1); count 6). [Fn.2] Counts 1 and 3 both alleged a great bodily injury enhancement involving domestic violence (§ 12022.7, subd. (e)).

> [Fn.2] Counts 1 and 2 were based on the October 3, 2015, incident; counts 3, 4, and 5 were based on the October 12, 2015, incident. The dissuading a witness offense charged in count 6 was based on Castro's alleged contact with the victim on December 9, 2015, during which he told her not to return to court. The facts underlying count 6 are omitted because they are not germane to the issues Castro raises on appeal.

On February 17, 2016, as part of a negotiated plea, Castro pled no contest to domestic violence in count 1 and assault with a deadly weapon in count 4 and he admitted the great bodily injury enhancement in count 1. Castro's plea agreement provided for the dismissal of the remaining counts and enhancement and a maximum prison term of 10 years.

*The Probation Report*

During a probation interview, Castro admitted abusing alcohol and methamphetamine, and ingesting them daily. However, he had never participated in a treatment program. Castro also stated that he was very regretful and understood that he hurt the CV, and that he really loved the CV and wanted to marry her.

The report indicated that in 2006, Castro was convicted of misdemeanor domestic violence involving a different victim and sentenced to 180 days in jail with all but eight days suspended. In 2009, he was convicted of misdemeanor second degree burglary and sentenced to 22 days in jail. In 2010, he was convicted of driving with a blood-alcohol content of 0.08 or greater. In 2014, he was convicted of misdemeanor battery involving a different confidential victim and sentenced to serve 24 days in jail. [Fn.3] Castro had several grants of probation revoked based on his failure to appear at court hearings. He was on probation for his misdemeanor battery conviction when he committed the underlying offenses in this matter.

3

> [Fn.3] The probation report contains the following notation with respect to Castro's 2006 battery on a spouse conviction and his 2014 battery conviction, "*Different CV."

The report noted that Castro was ineligible for probation unless the court found unusual circumstances and it concluded that none existed. (§ 1203, subd. (e)(2) & (3).) It listed five circumstances in aggravation: (1) Castro engaged in violent conduct that indicated he was a serious danger to society (Cal. Rules of Court, rule 4.421(b)(1) ); [Fn.4] (2) his prior convictions were numerous or increasing in seriousness (rule 4.421(b)(2) ); (3) he was on probation or parole when he committed the underlying offenses (rule 4.421(b)(4) ); (4) his prior performance on probation had been unsatisfactory (rule 4.421(b)(5) ); and (5) the court dismissed some counts (rule 4.421(c) ).

> [Fn.4] All further references to rules are to the California Rules of Court.

The report did not cite any circumstances in mitigation (rule 4.423). It recommended a 10-year prison term.

The report had attached to it a letter from the CV in which she professed her love for Castro and stated that they wanted to get married. She described Castro as a hardworking, loving, caring, and positive person. The CV also asserted that Castro was willing to "stay on the right path," that she had faith in him, and that they were both willing to take "classes." The CV asked the court to give them a "chance" and to remove the restraining order that was in place so she and Castro could get married and she could visit him while he was in custody.

*Sentencing*

On March 10, 2016, at Castro's sentencing hearing, defense counsel argued that Castro's lack of prior felony convictions and limited criminal history, his admission of responsibility prior to trial, his drug and alcohol abuse, and the CV's plea for leniency were mitigating factors. He also argued that none of Castro's misdemeanor offenses were "serious in the way that felonies are considered ... serious" and that the circumstances noted above warranted a grant of probation or imposition of the mitigated term.

Castro addressed the court and attributed his criminal conduct to not being "in a sober mind." He also expressed a desire to participate in a long-term rehabilitation program so he could help himself and his family.

The CV addressed the court and reiterated many of the things she stated in her letter, which the court acknowledged having read. She also reiterated that she had faith Castro was willing to change and she again asked the court for a "chance for both of [them]."

The prosecutor argued for a 10-year prison term and a 10-year protective order. The prosecutor also argued that Castro already had several opportunities to recognize he had a drug addiction, including when he was convicted of driving under the influence of alcohol and when he was first convicted of domestic violence. She also asserted that Castro's 2014 battery conviction was a domestic violence offense that was reduced to a battery. Although she was not familiar with the circumstances, she suggested it may have been reduced because of evidentiary issues. Additionally, she argued that despite Castro having this "pattern of conduct" for a long time and admitting that his drug addiction had been the cause of his incarcerations, Castro

4

never sought help for his addiction.

After hearing from counsel, Castro, and the CV, the court stated:

> "... I have been in the courthouse long enough and on the bench long enough to have a pretty good base of experience to establish a continuum of seriousness for these types of offenses. I've seen everything from very minor physical confrontations based on momentary lapses of judgment clearly resolvable with a moment of reflection by the parties involved. I've seen cases leading to death, cases of abuse over long periods of time with sadistic tendencies that shock anybody's conscience. *And, quite frankly, when I reviewed the facts of this case in our pretrial work this was one of the cases that tended to shock my conscience.*
>
> "The incidents that led to this particular prosecution, this particular confidential victim are clearly things that if they had received any kind of extended media coverage and people who read it or saw it on the news would go, 'My God, how could somebody do that?'
>
> *"I've also in the course of acquiring that base of knowledge in giving me the ability to see that continuum have come to learn that there is an undeniable emotional dynamic that goes with the victims of the domestic violence*, particularly as it increases in severity and the number of events. *There's a dynamic.* There's a clear psychological impact that takes hold in and of its own.
>
> "The other thing that I noted immediately when I read this RPO was that I was quite taken aback by the defendant's statement, which is documented on page 5 of the RPO, that for the first time that I was aware of[,] he actually was willing to take responsibility for this event—of these events. And[,] I think over the course of the time he's been in custody and [had] the time to reflect upon the severity of the charges that he ultimately admitted and the enhancements that he admitted I, quite frankly, have been willing to accept those regrets, those expressions of regrets as being sincere, but without any true depth or understanding.
>
> "And it may well be that controlled substances were behind a lot of the violent actions that have defined Mr. Castro since 2006, but it's not an excuse. And, quite frankly, I agree with the People on the fact that if that was the real problem behind all of this, then it should have been addressed all along.
>
> "I note that in the 2006 case it shows that the defendant actually went to a program through the Las Palmas Center, evidently completed it. He didn't have any need for any further probation revocations or reviews. I note that in the 2010 DUI he went to a DUI program as required by law. He was given the benefit of the Scared Stiff Program. *In the 2014 battery, which is in fact a [domestic violence] case as well*, he went to a 12-week anger management program or at least attempted to it looks like. It was ultimately deleted and he was just given jail time. But at any—at any of those times the underlying problems could and should have been recognized by the defendant. Instead, between 2006 and 2015 he moves on to what I understand to be clearly the victim of domestic violence.
>
> "So while I'm willing to—I'm willing to assign some sincerity to the regrets

5

that are expressed at this time I can't let it interfere [with] the objective, understanding of what happened in this case, what has happened before this case, how the law applies to those events, those circumstances, *and notwithstanding the dynamics of the victim that I do understand. I've seen this. I have taken it upon myself to listen very carefully to experts who have testified in this court in other cases about these dynamics.*" (Italics added.)

The court then denied probation stating that it did not find any unusual circumstances and that, even if there were, it would not grant probation because of Castro's criminal history.

In addressing the defense's arguments that the absence of felony convictions was a mitigating circumstance, and that his misdemeanor offenses were not as serious in the way felonies were, the court stated:

"I think the distinction between misdemeanor and felony status in this particular case is really not determinative. *These are crimes of violence and crimes of poor management on supervised release, and it is clear by the time we get to this case that we have reached almost the ultimate level of seriousness.*" (Italics added.)

Next, in disagreeing with the probation report's conclusion that there were no aggravating circumstances related to the crime (rule 4.421(a) ), the court stated:

"The crimes in this case show a repeat attack within a period of days, including a re-injury to previously medically treated lacerations of the scalp. When you take a look at the seriousness of the injuries in this case I'm surprised that a long hospitalization wasn't necessary."

Before announcing its sentencing decision, the court stated:

"... And while, quite frankly, I do not believe that the ten years involved [in the plea agreement] is, I think, the maximum that these crimes could result in and I don't want this to be seen as a meaningless measure. I want this to be seen as some recognition of a very late-to-the-table recognition of the problem you have caused to your victim, to your previous victims, and to your community. I am going to exercise discretion and only impose the midterm of three years on Count One, 273.5(a)."

The court then imposed an aggregate nine-year prison term: the midterm of three years on Castro's domestic violence conviction in count 1, a five-year great bodily injury enhancement on that count, and a consecutive one-year term (one-third the middle term of three years) on Castro's assault conviction in count 4.

Afterwards, the court stated it was setting the duration of the protective order at nine years and asked counsel if that would make it run through the year 2025. The prosecutor responded affirmatively. After advising Castro of his right to appeal, the court asked defense counsel if he would answer any questions Castro might have about the order and counsel stated he would. Before concluding the hearing, the court asked counsel if there was anything else and counsel each answered, ''no'' and thanked the court. At no time did defense counsel object to the sentence imposed.

Castro, 2018 WL 6259540, at *1–5.

6

## III. DISCUSSION

### A. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

### B. Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that

an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Cullen v. Pinholster, 563 U.S. 170, 203 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 562 U.S. at 103.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

C.     Review of Petition

The petition presents the following claims for relief: 1) The trial court relied on expert testimony about domestic violence that was outside the record; 2) The trial court misapprehended a material aspect of Petitioner's criminal record at sentencing; and 3) Petitioner was denied a meaningful opportunity to object to sentencing error, or in the alternative, he was denied the effective assistance of counsel.

1. Outside Expert Testimony

In his first claim for relief, Petitioner contends the trial court improperly relied on expert testimony about domestic violence outside the record when exercising its discretion during sentencing. Petitioner raised this claim on direct appeal in the state courts. In the last reasoned decision, the Fifth DCA denied the claim as follows:

> Castro contends he is entitled to remand for resentencing because the trial court exercised its discretion in reliance on expert testimony about domestic violence that was outside the record. Respondent contends Castro forfeited this contention by his failure to object in the trial court. We agree with respondent.
>
> "A party in a criminal case may not, on appeal, raise 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' if the party did not object to the sentence at trial." (*People v. Gonzalez* (2003) 31 Cal.4th 745, 751 (*Gonzalez*), citing *People v. Scott* (1994) 9 Cal.4th 331 (*Scott*).) The rationale for the rule is elementary: "[C]ounsel is charged with understanding, advocating, and clarifying permissible sentencing choices at the sentencing hearing" and "[r]outine defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention." (*Scott*, at p. 353.) As long as there is a meaningful opportunity for counsel to object to purported deficiencies in the trial court's statement of reasons for its sentence choices during the sentencing hearing, counsel's failure to do so waives any appellate claim of error. (*Id*. at p. 356.)
>
> In *Gonzalez*, the court stated that "parties are given an adequate opportunity to seek such clarifications or changes if, at any time during the sentencing hearing, the trial court describes the sentence it intends to impose and the reasons for the sentence, and the court thereafter considers the objections of the parties *before* the actual sentencing[.]" (*Gonzalez, supra*, 31 Cal.4th at p. 752, original italics omitted & italics added.) Castro relies on this statement, to contend that counsel must be given an opportunity to object *before* sentencing, or the *Scott* rule does not apply. He further contends defense counsel did not have a meaningful opportunity to object to the court considering the expert testimony on domestic violence that was outside the record because the court considered this evidence after the parties had submitted the matter. Thus, according to Castro, he did not forfeit this issue. Castro is wrong.
>
> Although, the above quote from *Gonzalez* describes one way in which a court can provide the parties with a meaningful opportunity to object, the *Gonzalez* court did not hold that that was the exclusive manner in which the court may provide this opportunity. Thus, in *Gonzalez*, the court found that defense counsel had a

9

meaningful opportunity to object even though that opportunity occurred after the court had pronounced sentence. (*Gonzalez, supra*, 31 Cal.4th at p. 755.) Further, in *People v. Boyce* (2014) 59 Cal.4th 672, after sentencing the defendant, the trial court entertained the prosecutor's request for a clarification about the certification of the record, it allowed defense counsel to enumerate his objections to the probation report, and it adjourned after asking counsel if there was anything else to discuss. Based on these circumstances, the *Boyce* court found that the defendant had a meaningful opportunity to object and thus forfeited his claim of sentencing error. (Id. at p. 731.)

Here, defense counsel had three meaningful opportunities to raise any objections to Castro's sentence—when the court broached the subjects of the restraining order and Castro's right to appeal and when it asked the parties if they had anything further. Thus, Castro forfeited this issue on appeal.

However, even if this issue were properly before us, we would reject it. A court may receive information on which to base its sentencing decision from either a probation report or a hearing in open court. (§§ 1203, 1204.) Information from other sources is prohibited. (§ 1204.) Additionally, due process considerations prevent a court from receiving information adverse to the defendant without affording the defendant an opportunity to respond. (*In re Calhoun* (1976) 17 Cal.3d 75, 84 [prosecutor improperly sent letter to judge recommending consecutive terms without sending copy to defendant]; *People v. Shaw* (1989) 210 Cal.App.3d 859, 867 [sentencing judge who receives improper ex parte communication may either disregard it or give parties opportunity to respond].) Thus, in sentencing Castro, the court erred when it considered expert testimony on domestic violence from prior court hearings. However, the error was harmless.

"The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." (*People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 831.)

In *People v. Borchers* (1958) 50 Cal.2d 321 (*Borchers*), in ruling on a motion for a new trial, the trial court reduced a defendant's conviction for second degree murder to voluntary manslaughter, in lieu of granting a new trial. (*Id*. at p. 323.) In so doing, the trial court stated it considered evidence from psychiatrists on the mental condition of the defendant that was presented only in the sanity phase of the trial. (*Id*. at p. 329.)

On appeal by the People, the *Borchers* court concluded that "[f]rom the evidence viewed as a whole the trial judge could well have concluded that defendant was roused to a heat of 'passion' by a series of events over a considerable period of time[.]" (*Borchers, supra*, 50 Cal.2d at p. 328.) In discussing the trial court's consideration of the psychiatrist's evidence, the court stated:

> "A problem is presented by the statement of the trial judge that in reducing the class of the offense he considered 'the evidence of the psychiatrists on the mental condition of this defendant.' This evidence of the psychiatrists was not before the jury when they found defendant guilty of second degree murder; it was presented only on the trial of the issue of not guilty by reason of insanity. *Nevertheless, we conclude that this statement of the trial judge should not be used to impeach his reappraisal of the evidence in the case in chief. The latter fully supports the order and the testimony of the*

*psychiatrists is in effect merely cumulative to the result.* (*Borchers, supra*, 50 Cal.2d at pp. 329-330, italics added.)

In *People v. Cartier* (1960) 54 Cal.2d 300 (*Cartier*), in sentencing a defendant convicted of first degree murder to death, the trial court made statements that suggested it erroneously believed that "such penalty must be imposed unless mitigating circumstances were found." (*Id.* at p. 312.) In rejecting the defendant's claim that the trial court erred in applying the law in fixing the penalty, the Supreme Court stated:

> "Viewing the judge's discussion as a whole, it does not appear that he improperly considered himself bound by this asserted (and dubious) custom or theory. Nor does his statement that 'the homicide here is so terrible I can find nothing to mitigate it,' in the light of his entire remarks, establish a misconception that in the absence of mitigating circumstances he was required to impose the extreme penalty; rather it indicates ... he considered the apparent barbarity of the manner and means of the homicide (just as he considered defendant's previous good record, his intoxication, and the interests of society) in making the choice of penalty." (*Cartier, supra*, 54 Cal.2d. at pp. 312-313.)

Citing its decision in *Borchers*, the court also held:

> "The rule is applicable to the facts of the present case that where a judge's statements as a whole disclose a correct concept of the law and its application, no secondary remarks should be deemed to have impeached his determination." (*Cartier, supra*, 54 Cal.2d at p. 313.)

In *People v. Lichens* (1963) 59 Cal.2d 587 (*Lichens*), the court denied probation to a defendant convicted of assault by means of force likely to produce great bodily injury even though the probation report recommended probation. On appeal, the defendant claimed that in considering probation, the court listened to, and was influenced by, hearsay evidence not contained in the probation officer's report and not presented in a judicial hearing. (*Id.* at p. 588.)

In rejecting this claim, the Supreme Court stated:

> "[T]he trial court's single allusion to matters of knowledge outside the record concerning defendant's pattern of conduct was merely a brief introduction to his clear statement that his order to deny probation was based upon a weighing of the prosecutrix's testimony under oath against defendant's statement to the probation officer, both of which are matters in the record." (*Lichens, supra*, 59 Cal.2d at p. 589.)

The court then cited the rule it announced in *Cartier* and stated that it clearly applied to that case. (*Lichens, supra*, 59 Cal.2d at pp. 589-590.)

The court, here, considered the probation report, the argument of counsel, and statements by Castro and the CV in imposing an aggregate prison term of only nine years, even though it could have imposed a 10-year term. Further, the circumstances of Castro's domestic violence offense, alone, fully support the court's decision to impose that term. During the first assault, Castro broke a cutting board over the CV's head, opening a gash in her head that required staples to close, and he initially refused to seek medical treatment for the CV. During the second assault, Castro mercilessly beat the victim with his fists and a closet rod fracturing her skull, her

11

nose, and a finger, and reopening the cut Castro inflicted on the CV eight days earlier. The CV also suffered numerous bruises and Castro threatened to kill her in an attempt to dissuade her from reporting the matter to police. The court was clearly appalled by Castro's conduct toward the CV and noted that the underlying incident was part of a pattern of violence that had culminated in two horrendous attacks on the CV that had "reached almost the ultimate level of seriousness." The court also stated that the beating Castro inflicted on the CV "shock[ed its] conscience" and that the underlying conduct in this matter deserved a greater term than 10 years, although it imposed a nine-year term in light of Castro's expression of remorse.

Moreover, the CV's plea for leniency was not a "powerful circumstance in mitigation" as Castro contends. Despite the horrendous attacks on her, in letters to Castro she blamed herself for Castro assaulting her, she also told the prosecutor and defense counsel that she lied about what happened, and in her letter and statements to the court, she professed her love for Castro, her desire to marry him, and her unfounded belief that he could change. Even without the benefit of expert testimony, it is readily apparent to any observer that the CV's plea for leniency was the product of a violent and dysfunctional relationship that had corrupted her rational thought process. In view of these circumstances, it is doubtful the court would have ascribed to the CV's plea for leniency a greater mitigating effect, or imposed a lesser term, even if the court had not considered expert testimony from prior domestic violence cases. Therefore, since the court's statements as a whole disclose a "correct concept of the law and its application," its secondary remarks regarding prior expert testimony did not impeach its decision to impose a nine-year prison term. [Fn.5] (*Cartier, supra*, 54 Cal.2d at p. 313.)

> [Fn.5] Castro relies on *People v. Webster* (1983) 143 Cal.App.3d 679 to contend that the court's error requires remand for resentencing. In *Webster*, the matter was remanded to the trial court for resentencing because the trial court relied on ex parte communications with the California Youth Authority (CYA) in deciding to sentence the defendant to an eight-year prison term instead of committing him to the CYA where he would serve only 18 months. (*Id.* at pp. 681, 683-684.) *Webster*, however, is inapposite because, unlike the instant case, it involved several ex parte communications by the trial court and the court in *Webster* did not engage in a prejudice analysis in determining that remand for resentencing was appropriate. In any event, because this case is more like *Borchers*, *Cartier* and *Lichens*, the result, here, is controlled by those cases.

Castro, 2018 WL 6259540, at *5-8.

  a. <u>Procedural Default</u>

As noted above, the state court found that Petitioner had forfeited his claim by failing to object to his sentence during sentencing. Respondent contends that Petitioner's claim is thus procedurally defaulted, and this Court agrees.

A federal court will not review a claim of federal constitutional error raised by a state habeas petitioner if the state court determination of the same issue "rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v.

12

Thompson, 501 U.S. 722, 729 (1991). This rule also applies when the state court's determination is based on the petitioner's failure to comply with procedural requirements, so long as the procedural rule is an adequate and independent basis for the denial of relief. Id. at 730. For the bar to be "adequate," it must be "clear, consistently applied, and well-established at the time of the [ ] purported default." Fields v. Calderon, 125 F.3d 757, 762 (9th Cir. 1997). For the bar to be "independent," it must not be "interwoven with the federal law." Michigan v. Long, 463 U.S. 1032, 1040-41 (1983). If an issue is procedurally defaulted, a federal court may not consider it unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 749-50.

In Melendez v. Pliler, 288 F.3d 1120, 1125 (9th Cir. 2002), the Ninth Circuit held that California's contemporaneous objection doctrine is clear, well-established, and has been consistently applied. In Vansickel v. White, 166 F.3d 953 (9th Cir. 1999), the Ninth Circuit held that the contemporaneous objection bar is an adequate and independent state procedural rule. Here, Petitioner did not challenge the sentence despite several opportunities to do so. Thus, the claim is procedurally defaulted and should be dismissed. In any case, as discussed below, the claim is without merit.

    b. Analysis

First, Petitioner's contention that evidence was introduced against him without providing him an opportunity to respond is without merit. The sentencing court made the remarks at issue during sentencing, and at no time did counsel object. Where a defendant fails to object or move for a continuance regarding evidence introduced against him at sentencing, he cannot complain that he was denied the opportunity to respond to the challenged evidence. Gray v. Nederland, 518 U.S. 152, 169-70 (1996); Weatherford v. Bursey, 429 U.S. 545, 561 (1977). Thus, Petitioner's due process rights were not implicated.

In addition, a defendant has no constitutional right to sentencing with the exclusion of all externally derived judicial expertise. Rather, "judges exercise their sentencing discretion through 'an inquiry broad in scope, largely unlimited either as to the kind of information [they] may

consider, or the source from which it may come.'" Harris v. United States, 536 U.S. 545, 558 (2002) (quoting United States v. Tucker, 404 U.S. 443, 446 (1972)), *overruled on other grounds by* Alleyne v. United States, 570 U.S. 99 (2013). The Supreme Court "has recognized that this process is constitutional - and that the facts taken into consideration need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt." Id. "Traditionally, sentencing judges have considered a wide variety of factors in addition to evidence bearing on guilt in determining what sentence to impose on a convicted defendant." Wisconsin v. Mitchell, 508 U.S. 476, 485 (1993); see also Williams v. New York, 337 U.S. 241, 246 (1949). This may include "the judge's own knowledge." United States v. Littlesun, 444 F.3d 1196, 1199 (9th Cir. 2006). Petitioner fails to show that any violation of his due process rights.

In any event, Petitioner has not shown the state court's finding that he did not suffer any prejudice to be unreasonable. As noted by the appellate court, the sentencing judge found that Petitioner's repeated assaults on the victim and the severity of the injuries suffered by the victim were sufficient by themselves to warrant the maximum 10-year term. The court nonetheless sentenced Petitioner to only a nine-year term given his expression of remorse. Even without the sentencing court's reliance on outside expertise, it was clear that the confidential victim's actions following the incident and her plea for Petitioner's leniency were not the product of a rational thought process. Petitioner has not shown that the outcome would have been any better than the nine-year term he received. The claim should be denied.

2.  Reliance on Prior Conviction

Next, Petitioner claims he is entitled to resentencing because the trial court exercised its discretion on the basis of a misapprehension about a material aspect of his prior criminal record. Specifically, Petitioner alleges that the sentencing court found that he should receive the maximum sentence allowed under the plea bargain as both prior misdemeanor convictions were for domestic violence, because this showed he had "this pattern of conduct a long time." (Doc. 1 at 7.) He states one of the priors was for simple battery, not domestic violence.

Petitioner presented this claim on direct review in the state courts. In the last reasoned decision, the Fifth DCA rejected the claim as follows:

14

Castro contends his 2014 battery conviction offense did not involve domestic violence. As proof of this, he cites the trial court's failure to order him to complete a batterer's class as a condition of the misdemeanor probation he was granted in that case, which he would have been required to complete if the underlying battery offense had involved domestic violence. (*See, e.g.*, § 1203.097, subd. (a)(6).) According to Castro, if the court "had proceeded on an accurate assessment of his 2014 conviction, it would have been less receptive to the prosecutor's argument" that he had engaged in a "pattern of conduct of domestic violence" and more receptive to the defense argument that his prior record of misdemeanor criminal conduct was comparatively insignificant. Thus, according to Castro, the matter must be remanded for resentencing to allow the court to properly exercise its sentencing discretion and determine the propriety or duration of a protective order based on accurate information about his criminal record.

Defense counsel did not dispute or object in the trial court to the assertion by the prosecutor and the court that Castro's 2014 battery conviction involved domestic violence. Thus, for the reasons discussed in the previous section, we conclude Castro also forfeited this issue by his failure to object in the trial court. However, if this issue were properly before us, we would reject it.

Section 1203.097 provides that if a defendant is granted probation for a crime that *involves* a person defined in section 6211 of the Family Code, the terms of probation shall include a requirement that the defendant attend a batterer's program of not less than one year. (§ 1203.097, subd. (a)(6).)

"Section 1203.097 applies to any person placed on probation for a crime *if the underlying facts of the case involve domestic violence*, even if the statute defining the crime does not specifically refer to domestic violence." (*People v. Cates* (2009) 170 Cal.App.4th 545, 548, italics added.)

In 2006, when Castro was convicted of domestic violence, section 1203.097, subdivision (a)(6), also required a defendant convicted of an offense involving domestic violence to complete a batterer's class as a condition of probation. (Stats. 2003, ch. 431, § 1, pp. 2626-2632.) Castro's probation report, however, does not indicate that he was required to attend[] a batter[er]'s class as a condition of the probation he was granted in the 2006 case. Thus, the absence of a notation in the report that Castro was required to attend a batterer's class as a condition of the probation he was granted for his 2014 battery conviction, does not indicate that the underlying offense did not involve domestic violence. Further, although Castro's 2014 battery conviction may have involved domestic violence, as the prosecutor noted, problems of proof may have resulted in Castro being allowed to plead to simple battery without the court making a determination that the offense involved domestic violence. In view of these circumstances, the failure to include a counseling program as a probationary term for Castro's battery conviction does not establish that the battery offense did not involve domestic violence. Thus, we reject Castro's contention that the court misapprehended a material part of his prior record, i.e., that his 2014 battery conviction did not involve domestic violence.

In any case, even if the court erroneously believed that Castro's battery conviction involved domestic violence, the error was harmless. Castro relies on the following quote from *People v. Gutierrez* (2014) 58 Cal.4th 1354, to argue that the matter should be remanded for resentencing: "'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" *than one whose sentence is or may have*

> *been based on misinformation regarding a material aspect of a defendant's record.*' [Citation.] In such circumstances, we have held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'" (*Id*. at p. 1391, italics added.)
>
> In the context of this case, Castro's battery conviction was not a "material aspect" of his record and it was clearly overshadowed by the horrendous circumstances of his current offenses. Thus, even if the court erred in concluding that Castro's battery conviction involved domestic violence, this would not require remand to the trial court so that it could exercise its informed discretion in sentencing him.
>
> Castro also cites *United States v. Tucker* (1972) 404 U.S. 443 (*Tucker*) and *People v. Ruiz* (1975) 14 Cal.3d 163 (*Ruiz*) to contend the court's error requires remand for resentencing. In sentencing the defendant, the trial court in *Tucker* relied on two convictions that had been obtained while the defendant was not represented by a lawyer. (*Tucker, supra*, 404 U.S. at p. 447.) The United States Supreme Court remanded the matter for resentencing because the sentence imposed was "founded at least in part upon misinformation of constitutional magnitude." (*Ibid*.) In *Ruiz*, the defendant's conviction for possession for sale of drugs was reduced to simple possession on appeal. In remanding the matter for resentencing, the court stated that the defendant was "entitled to a new probation hearing wherein the court may make a new judgment relative to his fitness for probation in light of the crime of which he now stands convicted." (*Ruiz*, at p. 167.) *Tucker* and *Ruiz* are inapposite because Castro's sentence was not founded on "misinformation of a constitutional magnitude" or based on a crime that was later reduced to a lesser offense on appeal.
>
> Moreover, "'[w]hen a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper.'" (*People v. Cruz* (1995) 38 Cal.App.4th 427, 433-434.)
>
> In its sentencing comments, the court mentioned the violence involved in Castro's offense, but it did not state that he had engaged in a pattern of domestic violence, nor did it cite such a pattern as a circumstance in aggravation. Instead, the court stated that the facts of the instant case "tended to shock [its] conscience" and that Castro's conduct had "almost [reached] the ultimate level of seriousness." The court also stated that although it believed Castro's offense merited more than a 10-year term, it imposed only a nine-year aggregate term in order to acknowledge his belated recognition of responsibility for his offenses. Further, the probation report listed five circumstances in aggravation and the court cited an additional one. Given these circumstances, it is doubtful the court would have imposed a term less than nine years even if it had not concluded that his 2014 battery offense involved domestic violence. Thus, we conclude that if any error occurred, it was harmless.

Castro, 2018 WL 6259540, at *9-10.

   a. Procedural Default

With this claim as well, the state court found that Petitioner had procedurally defaulted by failing to object to the characterization of his prior battery conviction as involving domestic violence. Thus, the Court is procedurally barred from considering the claim. Melendez, 288 F.3d

16

at 1125; Vansickel, 166 F.3d 953. In any case, as discussed below, the claim is without merit.

### b. Analysis

Petitioner claims that he is entitled to resentencing because the trial judge was misinformed about a material aspect of his prior criminal record. In United States v. Tucker, the Supreme Court determined that a sentence founded upon misinformation of constitutional magnitude required resentencing. United States v. Tucker, 404 U.S. 443, 447 (1972). In Tucker, the sentencing judge had given specific consideration to the defendant's previous convictions in determining his sentence. Id. However, two of the three prior convictions were constitutionally invalid under Gideon v. Wainwright, 372 U.S. 335 (1963). The Supreme Court found that had the sentencing judge known that two of the three prior convictions were constitutionally invalid, the factual circumstances of the defendant's background would have appeared dramatically different. Id. at 448. The Supreme Court then concluded that the sentence might have been different. Id.

The Fifth DCA determined that the alleged misinformation at issue was not of constitutional magnitude, and this Court does not find that determination to be unreasonable. In Tucker, the sentencing court relied on two convictions that had been unconstitutionally obtained while the defendant was not represented by a lawyer and had not validly waived one. Id. at 447. Here, the sentencing court noted the two prior convictions—which were not constitutionally infirm. In addition, the court did not rely on the prior convictions and whether Petitioner had engaged in a *pattern of domestic violence* in arriving at its sentence. The court focused instead on the horrendous nature of the violence involved in the underlying offense. The court found that the violent nature of the offense alone warranted the maximum sentence of 10 years, yet the court reduced the sentence to an aggregate 9-year term based on Petitioner's belated acceptance of responsibility. The court did not cite a pattern of domestic violence as a factor in aggravation. Furthermore, Petitioner has not shown that the 2014 conviction did not in fact involve domestic violence. Thus, Petitioner fails to show his sentence was founded upon misinformation of constitutional magnitude, and he has not shown that the sentence would have been different but for the alleged misinformation. He has not shown the state court's rejection of the claim to be contrary to, or an unreasonable application of, controlling Supreme Court authority. The claim

should be denied.

### 3. Ineffective Assistance of Counsel

In his final claim for relief, Petitioner alleges defense counsel was ineffective in failing to object to the trial court's use of externally obtained expertise and to the trial court's misapprehension of a material fact during sentencing. Petitioner raised this claim in direct review, and in the last reasoned decision, the Fifth DCA denied the claim as follows:

> Castro contends he was denied the effective assistance of counsel if he forfeited any of the issues discussed above by defense counsel's failure to tender an appropriate objection. There is no merit to this contention.
>
> The standard for evaluating a claim of ineffective assistance of counsel is well established. It requires a two-prong analysis showing that counsel's representation was deficient based on an objective standard under prevailing professional norms, and that the defendant was prejudiced by the deficient representation under a reasonable probability standard. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688.) However, if it is easier to dispose of an ineffective assistance of counsel claim on the ground of lack of sufficient prejudice, that course should be followed. (*Id*. at p. 697.) Since we concluded in the two prior sections that the two alleged errors defense counsel failed to object to were harmless, we also reject Castro's ineffective assistance of counsel claim.

Castro, 2018 WL 6259540, at *10.

#### a. Legal Standard

Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of counsel are reviewed according to Strickland's two-pronged test. Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75 (1988) (holding that where a defendant has been actually or constructively denied the assistance of counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 687-88. Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional

18

errors, he would have prevailed at trial. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).

With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general Strickland standard for ineffective assistance. Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). Accordingly, the question "is not whether a federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Knowles, 556 U.S. at 123. In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable. Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.")

    b. Analysis

In rejecting the claim, the state court applied the correct standard and concluded that Petitioner suffered no prejudice. Therefore, the only question before this Court is whether that determination was objectively unreasonable. The Court finds that it was not.

In his first claim, Petitioner alleged that the sentencing court erred by considering externally obtained expertise. As previously discussed, Petitioner failed to demonstrate that this was unlawful. In addition, Petitioner failed to show that the result would have been any different had the court not considered its expertise obtained from prior domestic violence cases. The court based its sentence on the horrendous nature of the offense, stating that the facts alone merited a maximum sentence. Nevertheless, the court reduced the sentence to 9 years based on Petitioner's acceptance of responsibility. Thus, even if defense counsel had objected, there is no reasonable

probability that the sentence would have been different.

In his second claim, Petitioner's asserted that counsel failed to object to the trial court's allegedly mistaken assertion that Petitioner had two prior convictions for domestic violence. As previously discussed, regardless of whether the trial court was misinformed that one of Petitioner's prior battery convictions involved domestic violence, there was no reasonable probability that it affected his sentence. The trial court relied on the facts of the offense and noted the violence involved in the attacks alone warranted the maximum term, yet it reduced the sentence to 9 years. Thus, even if counsel had objected, the sentence would have been the same. Petitioner fails to show that the state court's rejection of his claim was unreasonable. Therefore, the claim should be denied.

**IV.     RECOMMENDATION**

Based on the foregoing, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus be DENIED with prejudice on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be served and filed within ten court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:     **July 26, 2019**                                       /s/ *Sheila K. Oberto*
                                                                          UNITED STATES MAGISTRATE JUDGE